FILED

2016 SEP 19 P 12: 35

U.S. DISTRICT COURT

|  |  |
|---|---|
| KLC FINANCIAL, INC., | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 3: 16 cv563 |
|  | ) Reeves/Shirley |
| SURFACE SQUAD, LLC and | ) |
| TODD CURTIS DEAL, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## COMPLAINT FOR MONEY DAMAGES & WRIT OF REPLEVIN AND TURNOVER OF EQUIPMENT

NOW COMES the Plaintiff, KLC Financial, Inc. ("KLC"), by and through its attorneys, Dressler | Peters, LLC, and for its Complaint for Money Damages & Writ of Replevin and Turnover of Equipment against Defendants SURFACE SQUAD, LLC, ("SURFACE SQUAD), and TODD CURTIS DEAL ("TODD DEAL") (collectively "DEFENDANTS"), states as follows:

## PARTIES

1.      KLC is a Minnesota corporation with its principal place of business at 3514 County Road 101, Minnetonka, MN 55345.

2.      SURFACE SQUAD is a Tennessee limited liability company with its principal place of business at 507 Omni Lane, Knoxville, TN 37932.

3.      TODD DEAL is the only member of SURFACE SQUAD.

4.     TODD DEAL is a citizen of the State of Tennessee residing at 1308 Willow Grove Drive, Knoxville, TN 37932.

## JURISDICTION AND VENUE

5.     Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1332 as the Plaintiff is a corporation organized under the laws of the State of Minnesota and has its principal place of business located in Minnesota and therefore under 28 U.S.C. §1332 (c), Plaintiff, for jurisdictional purposes, is considered a citizen of the State of Minnesota. Defendant SURFACE SQUAD is a limited liability company with one member who is an individual and a citizen of the State of Tennessee. Defendant TODD DEAL is a citizen of the State of Tennessee. Therefore, Plaintiff and Defendants are citizens of different states. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(a) by virtue of the fact that a substantial part of the events or omissions giving rise to KLC's claim occurred in this district, a substantial part of the property that is the subject of this action is located within this district, the Defendants reside in this judicial district and are subject to personal jurisdiction in this judicial district.

## FACTS

7.     KLC and SURFACE SQUAD entered into an equipment lease agreement (the "Agreement") relating to a piece of commercial business equipment (the "Equipment"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

8.     The Agreement was for a 10,000 Gallon Liquid Asphalt Emulsion Storage Tank SN# 500062551PT (the "Equipment").

9.      The Agreement required a security deposit plus 48 monthly installments of $4,905.80. See Exhibit A.

10.      An Addendum was also executed with respect to the Agreement that listed TODD DEAL as an Additional Lessee to the Agreement. A copy of the Addendum executed by TODD DEAL on August 2, 2015 is attached hereto as Exhibit B.

11.      To induce KLC to enter into the Agreement, and to secure absolute and unconditional payment and performance of the obligations owed to KLC under the Agreement, TODD DEAL executed a personal guaranty (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit C.

12.      A Disbursement Authorization was also executed wherein TODD DEAL "acknowledge[d] receipt of all of the equipment and its acceptance of purposes of the Agreement." A true and correct copy of the Disbursement Authorization is attached hereto as Exhibit D.

13.      KLC filed a UCC Financing Statement for the Agreement with the State of Tennessee's Secretary of State's Office. A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit E.

14.      SURFACE SQUAD executed a Collateral Pledge Agreement for the Agreement that granted to KLC a security interest in all of SURFACE SQUAD's business assets to secure repayment of the obligations owed to KLC by SURFACE SQUAD under the Agreement. A true and correct copy of the Collateral Pledge Agreement is attached hereto as Exhibit F.

15.      KLC fully performed its obligations under the Agreement.

16.      SURFACE SQUAD has defaulted under the terms of the Agreement by failing and refusing to make payments to KLC due under the Agreement.

17.     TODD DEAL has defaulted under the terms of the Agreement by failing and refusing to make payments to KLC due under the Agreement.

18.     TODD DEAL has also defaulted under the terms of his Guaranty by failing and refusing to make all payments required under his Guaranty.

19.     KLC made demand upon SURFACE SQUAD and TODD DEAL for the payments past due and owing under the Agreement and Guaranty, and SURFACE SQUAD and TODD DEAL have failed and refused to pay.

20.     The amount due and owing by SURFACE SQUAD and TODD DEAL and the date of default are as follows:

**Past Due Payment**

| | |
|---|---|
| 8 payments (12/20/2015-7/20/2016) | $39,190.22 |
| Partial Payment Received | ($1,550.00) |
| Sales Tax | $ 3,481.72 |
| Transaction Fee | $ 16.45 |
| NSF Fee | $ 100.00 |
| Late Fee (15% after 10 days) | $ 1,020.88 |
| Interest (after 40 days) | $ 807.82 |
| **Sub-Total Past Due:** | **$43,067.09** |

**Future Payments**

| | |
|---|---|
| 38 payments (8/20/2016-9/20/2019) | $186,420.40 |
| Discount Future Payments 3% | ($ 5,592.61) |
| Sales Tax | $ 16,726.57 |
| **Sub-Total Future Payments:** | **$197,554.36** |

| | |
|---|---|
| Residual Due: | $ 27,000.00 |
| Sales Tax: | $ 2,497.50 |
| Security Deposit (retained) | ($ 40,500.00) |
| **Total Amount Due as of July 20, 2016:** | **$229,618.95** |

21. KLC is entitled to recover prejudgment interest at 18% per annum from July 20, 2016 as shown above in ¶ 14 with respect to the Agreement, plus its attorneys' fees and costs, pursuant to paragraph 22 of the Agreement. See Exhibit A.

## COUNT I

### BREACH OF EQUIPMENT LEASE AGREEMENT AGAINST SURFACE SQUAD

22. KLC restates and re-alleges Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23. SURFACE SQUAD defaulted under the terms of the Agreement by failing to pay the obligations Defendants owe to KLC under the Agreement.

24. KLC has fully performed under the Agreement.

25. KLC has been damaged by SURFACE SQUAD'S defaults under the Agreement in the amount of $229,618.95, plus prejudgment interest at 18% per annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

WHEREFORE, KLC FINANCIAL, INC., seeks the entry of judgment against SURFACE SQUAD under Count I of this Complaint in the amount of $229,618.95 plus prejudgment interest at 18% annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

## COUNT II

### BREACH OF EQUIPMENT LEASE AGREEMENT AGAINST TODD DEAL

26. KLC restates and re-alleges Paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27. TODD DEAL has defaulted under the terms of the Agreement by failing to pay the obligations Defendants owe to KLC under the Agreement.

28.     KLC has fully performed under the Agreement.

29.     KLC has been damaged by TODD DEAL's defaults under the Agreement in the amount of $229,618.95, plus prejudgment interest at 18% per annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

WHEREFORE, KLC FINANCIAL, INC., seeks the entry of judgment against TODD DEAL under Count II of this Complaint in the amount of $229,618.95 plus prejudgment interest at 18% annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

## COUNT III
## <u>BREACH OF GUARANTY – TODD DEAL</u>

30.     KLC restates and re-alleges Paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31.     TODD DEAL defaulted under the terms of his Guaranty by failing to pay the obligations owed to KLC under the Agreement.

32.     KLC has fully performed under the Agreement and, therefore, has fully performed under the Guaranty.

33.     KLC has been damaged by TODD DEAL's default under his Guaranty in the amount of $135,000.00, plus prejudgment interest at 18% annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

WHEREFORE, KLC respectfully requests that this Court enter judgment in its favor and against TODD DEAL, under Count III of this Complaint in the amount of $229,618.95 plus

6

prejudgment interest that 18% per annum from July 20, 2016 as shown above in ¶ 20 with respect to the Agreement, until the date of judgment, plus attorney fees and costs.

## COUNT IV
## WRIT OF REPLEVIN & TURNOVER OF EQUIPMENT

34.    KLC repeats and re-alleges Paragraphs 1 through 33 as though fully set forth herein.

35.    Pursuant to paragraph 22 of the Agreement, "REMEDIES" of the Agreement, KLC is entitled to immediate possession of the Equipment upon SURFACE SQUAD's default.

If Lessee is in default, Lessor, with or without notice to Lessee, shall have right to exercise any one or more of the following remedies, concurrently or separately, and without any election of remedies being deemed to have been made: (a) enter upon Lessee's premises and without any court order or other process of law may repossess and remove the Equipment and pledged collateral, or render the Equipment unusable without removal, either with or without notice to Lessee. Lessee hereby waives any trespass or right of action for damages by reason of such entry, removal or disabling. Any such repossession shall not constitute a termination of this Lease unless Lessor so notifies Lessee in writing; (b) require Lessee, at its expense, to return the Equipment and collateral in good repair, ordinary wear and tear resulting from proper use thereof alone, excepted, by delivering it, packed and ready for shipment, to such place as Lessor may specify; (c) cancel or terminate this Lease and may retain any and all prior payments paid by Lessee; (d) declare all sums due and to become due under this Lease immediately due and payable, including as to any or all items of Equipment, without notice or demand to Lessee; (e) release the Equipment or collateral, without notice to Lessee, to any third party, upon such terms and conditions as Lessor alone shall determine, or may sell the Equipment or collateral, without notice to Lessee, at private or public sale, at which sale Lessor may be the purchaser; (f) sue for and recover from Lessee the sum of all unpaid rents and other payments due under this Lease then accrued, all accelerated future payments due under this Lease, reduced to their present value at a discounted rate of 3%, as of date of default, plus Lessor's estimate at the time this Lease was entered into of Lessor's residual interest in the Equipment, reduced to a present value at a discount rate of 3% as on the date of default; (g) pursue any other remedy available at law, by statute or equity. No right or remedy herein conferred upon or reserved to Lessor is exclusive of any other right or remedy herein, or by law or by equity provided or permitted, but each shall be cumulative of every other right or remedy given herein or now or hereafter existing by law or equity or otherwise, and may be enforced concurrently therewith or from time to time. No single or partial exercise by Lessor of any right or remedy hereunder shall preclude any other or further exercise of any other right or remedy.

See Exhibit A, paragraph "**22. Remedies**" (emphasis in original)

36.     The Agreement contains a Minnesota choice of law provision in paragraph 7 which provides:  "CHOICE OF LAW. … This Lease shall be considered to have been made in the state of Lessor's principal place of business listed above and shall be interpreted in accordance with the laws and regulations of the state of Lessor's principal place of business." See Exhibit A, paragraph "**7. CHOICE OF LAW**" (emphasis in original).

37.     The UCC of Minnesota, Article 9-609(a)(1) and (c) provides that, after default, a secured party may take possession of the Equipment; and if so agreed, and in any event after default, a secured party may require the debtor to assemble the Equipment and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. See Minnesota Statutes § 336.9-609. Secured Party's Right to Take Possession After Default.

38.     Tennessee law is similar to Minnesota's law and allows a secured creditor the right to take possession of equipment after a default.  See Tennessee Code Section 47-9-609.

39.     The description of the Equipment is as follows: One (1) 10,000 Gallon Liquid Asphalt Emulsion Storage Tank. SN#500062551PT.

40.     The Equipment is being wrongfully detained by Defendants.

41.     The cause of detention of the Equipment to KLC's best knowledge, information, and belief is that Defendants' financial distress has caused them to default under the Agreement and they are unwilling to surrender the Equipment.

42.     KLC has a superior right to possession of the Equipment by virtue of the Remedies provision contained in the Agreement and under the Uniform Commercial Code as adopted by Minnesota and Tennessee.

43. The Equipment has not been taken for a tax, assessment or fine or seized under any execution or attachment against the property of KLC, or that if so seized that it is exempt from the seizure.

44. The total value of the uncollected Equipment is estimated to be $50,000.00 assuming it is in good condition subject only to ordinary wear and tear.

45. The Equipment is materially declining in value and will continue to do so as time passes.

46. KLC believes that the Equipment is in the possession of SURFACE SQUAD at it place of business at 507 Omni Lane, Knoxville, TN 37932.

47. KLC has made demand upon Defendants for the return of the Equipment, however, the Defendants have failed or refused to surrender it.

48. The Equipment is not earnings and not exempt from execution.

49. The replevin and turnover order requested by KLC is not sought to hinder, delay or defraud any creditors of Defendants.

50. Based upon the foregoing, there is a substantial likelihood that KLC will prevail on the merits of this Complaint.

WHEREFORE, KLC FINANCIAL, INC. prays that this Court:

(a)  issue a turnover order against each of the Defendants immediately directing them to immediately turn possession of the Equipment as described in its or his possession or control, in good condition, less reasonable wear and tear, over to KLC or its designated agent:

- 10,000 Gallon Liquid Asphalt Emulsion Storage Tank SN# 500062551PT plus

(b)     issue a writ of replevin ordering the US Marshals to use all force reasonably necessary to obtain possession of the Equipment in the event that the Defendants do not immediately and voluntarily turn over the above-described Equipment to KLC or its designated agent, in good condition, less reasonable wear and tear; plus

(c)     enter a money judgment in an amount equal to the value of the Equipment not delivered to KLC or its designated agent or such designated officer under the order for replevin entered by this Court; and

(d)     awarding such other relief as this Court deems just.

## COUNT V LIEN FORECLOSURE

51.     KLC repeats and re-alleges Paragraphs 1 through 50 as though fully set forth herein.

52.     SURFACE SQUAD granted KLC a blanket lien interest in all of its business assets.  See Collateral Pledge Agreement attached as Exhibit F.

53.     Following an event of default, KLC may recover and liquidate all collateral acting as security for repayment of the obligations owed to KLC by SURFACE SQUAD which includes all business assets of SURFACE SQUAD.

54.     KLC seeks a court order providing that SURFACE SQUAD deliver all business assets to KLC to be sold at an auction and / or sheriffs' sale and the proceeds delivered to KLC consistent with the remedies provided under the Uniform Commercial Code.

WHEREFORE, KLC seeks a court order providing that SURFACE SQUAD deliver all business assets to KLC to be sold at an auction and / or sheriffs' sale and the proceeds delivered to KLC.

Respectfully Submitted,

KLC FINANCIAL, INC.

By: _____

**Dennis A. Dressler**
Dressler | Peters  LLC
70 West Hubbard, Suite 200
Direct: 312-602-7361
Main:   312-602-7360
Fax:     312-637-9378
e-mail: ddressler@dresslerpeters.com
website: www.dresslerpeters.com
Attorneys and Counselors at law

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

KLC FINANCIAL, INC.,        )
                                )
      Plaintiff,             )
                                )
      v.                        )       Case No.
                                )
SURFACE SQUAD, LLC and     )
TODD CURTIS DEAL,         )
                                )
      Defendants.          )

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared this day Spencer Thomas, known and personally identified by me to be said individual, who being by me duly sworn, deposed and stated upon his oath the following:

1.     I am the Executive Vice President of KLC Financial, Inc. ("KLC" or "Plaintiff"). KLC is a Minnesota corporation with its principal place of business at 3514 County Road 101, Minnetonka, MN 55345.

2.     I am duly authorized by KLC to execute this Affidavit as KLC's Executive Vice-President.

3.     I am over the age of eighteen (18) years and am not under or subject to any court-imposed disability, guardianship or disability. I am fully competent to make this Affidavit on behalf of Plaintiff which is suing Surface Squad, LLC and Todd Curtis Deal ("Defendants").

4.     In my capacity as Executive Vice President of KLC, I am in charge of supervising and handling aspects of the contracts between Plaintiff and Defendants as well as the repossession and sale of all related property and/or collateral.

1

5.     I have reviewed Plaintiff's Complaint for Money Damages & Writ of Replevin and Turnover of Equipment (the "Complaint") for this matter in its entirety, except as specifically modified by this Affidavit. I certify that the allegations in the Complaint are all true and correct. I certify that the Exhibits annexed to the Complaint are all true and correct copies or images of such documents.

6.     Plaintiff intends to call either myself or other parties to be named later, as witnesses in the event this matter proceeds to trial.

7.     I am competent to testify as to matters set forth in this Affidavit based upon my personal knowledge of such matters and, if called to testify in this action, I would testify that all statements set forth in this Affidavit are true and correct. I have either personal knowledge of the events recorded within the records of Plaintiff regarding the contracts between Plaintiff and Defendants or I am qualified and authorized to testify about the methods and processes used by Plaintiff to collect and record the information and data contained within Plaintiff's files regarding all events set forth in the Complaint.

8.     I have access to Plaintiff's files and records concerning Defendants and I have personal knowledge of the contents therein. I have reviewed such files and records, including those concerning the subject matter of the Complaint.

9.     Information recorded and documents collected in Plaintiff's files are recorded and collected as part of the regular practice of Plaintiff's business, are made in the regular course of its regular business activities, and are compiled by its employees at or near the time of transmission of that information by an employee who has personal knowledge of the transmitted fact.

10.    In preparation of this affidavit, I have reviewed Plaintiff's business records as they relate to all transactions concerning the contracts which are the subject matter of the Complaint filed in this case.

11.    I know Plaintiff's business custom and practice as it relates to a recording of payments to the accounts of its customers. Plaintiff records receipt of payments in a computer system. Each time Plaintiff receives a payment from a customer, the payment is always recorded in its computer records relating to the corresponding account by a person whose job responsibility it is to record such payments at the time such payments are made. I have access to the computerized payment records which are kept in the normal and ordinary course of Plaintiff's business. It is the regular act of Plaintiff to regularly record payments in the computer system at or near the time made. I have reviewed all of the payment records relating to the contracts which are the subject matter of the Complaint. All payments received by Plaintiff on the Contracts attached to the Complaint were applied as required.

12.    KLC uses computerized payment records which are recorded on equipment that is standard equipment in the industry for recording data such as payment records, the computerized entries were made in the regular course of business of KLC, at or reasonably near in time to the events recorded and that the sources of information, the method of data entry and preparation are all trustworthy.

13.    I have either personal knowledge of the events recorded within the records and files of Plaintiff concerning Defendants Surface Squad, LLC and Todd Curtis Deal, and the facts and events alleged in the Complaint; or, I am qualified and authorized to testify about the methods and processes used by Plaintiff to collect and record the information and data contained within Plaintiff's files regarding all facts and events set forth in the Complaint.

3

14. Information recorded and documents collected in Plaintiff's files are recorded and collected as part of its regular practice, or made in the regular course of Plaintiff's regular business activities, and are compiled by its employees at or near the time of transmission by an employee who has personal knowledge of the transmitted fact or document.

15. KLC and SURFACE SQUAD entered into an equipment lease agreement (the "Agreement") relating to a piece of commercial business equipment (the "Equipment"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

16. The Agreement was for a 10,000 Gallon Liquid Asphalt Emulsion Storage Tank SN# 500062551PT (the "Equipment").

17. The Agreement required a security deposit plus 48 monthly installments of $4,905.80. See Exhibit A.

18. An Addendum was also executed with respect to the Agreement that listed TODD DEAL as an Additional Lessee to the Agreement. A copy of the Addendum executed by TODD DEAL on August 2, 2015 is attached hereto as Exhibit B.

19. To induce KLC to enter into the Agreement, and to secure absolute and unconditional payment and performance of the obligations owed to KLC under the Agreement, TODD DEAL executed a personal guaranty (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit C.

20. A Disbursement Authorization was also executed wherein TODD DEAL "acknowledge[d] receipt of all of the equipment and its acceptance of purposes of the Agreement." A true and correct copy of the Disbursement Authorization is attached hereto as Exhibit D.

21.    KLC filed a UCC Financing Statement for the Agreement with the State of

Tennessee's Secretary of State's Office. A true and correct copy of the UCC Financing

Statement is attached hereto as Exhibit E.

22.    SURFACE SQUAD executed a Collateral Pledge Agreement for the Agreement

that granted to KLC a security interest in all of SURFACE SQUAD's business assets to secure

repayment of the obligations owed to KLC by SURFACE SQUAD under the Agreement. A true

and correct copy of the Collateral Pledge Agreement is attached hereto as Exhibit F.

23.    KLC fully performed its obligations under the Agreement.

24.    SURFACE SQUAD has defaulted under the terms of the Agreement by failing

and refusing to make payments to KLC due under the Agreement.

25.    TODD DEAL has defaulted under the terms of the Agreement by failing and

refusing to make payments to KLC due under the Agreement.

26.    TODD DEAL has also defaulted under the terms of his Guaranty by failing and

refusing to make all payments required under his Guaranty.

27.    Pursuant to paragraph 22 of the Agreement, "REMEDIES" KLC is entitled to

immediate possession of the Equipment upon SURFACE SQUAD's default.

If Lessee is in default, Lessor, with or without notice to Lessee, shall have right to
exercise any one or more of the following remedies, concurrently or separately, and
without any election of remedies being deemed to have been made: (a) enter upon
Lessee's premises and without any court order or other process of law may repossess and
remove the Equipment and pledged collateral, or render the Equipment unusable without
removal, either with or without notice to Lessee. Lessee hereby waives any trespass or
right of action for damages by reason of such entry, removal or disabling. Any such
repossession shall not constitute a termination of this Lease unless Lessor so notifies
Lessee in writing; (b) require Lessee, at its expense, to return the Equipment and
collateral in good repair, ordinary wear and tear resulting from proper use thereof alone,
excepted, by delivering it, packed and ready for shipment, to such place as Lessor may
specify; (c) cancel or terminate this Lease and may retain any and all prior payments paid
by Lessee; (d) declare all sums due and to become due under this Lease immediately due
and payable, including as to any or all items of Equipment, without notice or demand to

Lessee; (e) release the Equipment or collateral, without notice to Lessee, to any third party, upon such terms and conditions as Lessor alone shall determine, or may sell the Equipment or collateral, without notice to Lessee, at private or public sale, at which sale Lessor may be the purchaser; (f) sue for and recover from Lessee the sum of all unpaid rents and other payments due under this Lease then accrued, all accelerated future payments due under this Lease, reduced to their present value at a discounted rate of 3%, as of date of default, plus Lessor's estimate at the time this Lease was entered into of Lessor's residual interest in the Equipment, reduced to a present value at a discount rate of 3% as on the date of default; (g) pursue any other remedy available at law, by statute or equity. No right or remedy herein conferred upon or reserved to Lessor is exclusive of any other right or remedy herein, or by law or by equity provided or permitted, but each shall be cumulative of every other right or remedy given herein or now or hereafter existing by law or equity or otherwise, and may be enforced concurrently therewith or from time to time. No single or partial exercise by Lessor of any right or remedy hereunder shall preclude any other or further exercise of any other right or remedy.

See Exhibit A, paragraph "**22. Remedies**" (emphasis in original)

28.     The amount due and owing by SURFACE SQUAD and TODD DEAL to KLC

under the Agreement and Guaranty and the date of default are as follows:

| | |
|---|---|
| **Past Due Payment** | |
| 8 payments (12/20/2015-7/20/2016) | $39,190.22 |
| Partial Payment Received | ($1,550.00) |
| Sales Tax | $3,481.72 |
| Transaction Fee | $16.45 |
| NSF Fee | $100.00 |
| Late Fee (15% after 10 days) | $1,020.88 |
| Interest (after 40 days) | $807.82 |
| **Sub-Total Past Due:** | **$43,067.09** |
| | |
| **Future Payments** | |
| 38 payments (8/20/2016-9/20/2019) | $186,420.40 |
| Discount Future Payments 3% | ($5,592.61) |
| Sales Tax | $16,726.57 |
| **Sub-Total Future Payments:** | **$197,554.36** |
| | |
| Residual Due: | $27,000.00 |
| Sales Tax: | $2,497.50 |
| Security Deposit (retained) | ($40,500.00) |
| | |
| **Total Amount Due as of July 20, 2016:** | **$229,618.95** |

6

29.     KLC is entitled to recover prejudgment interest at 18% per annum from July 20, 2016 as shown above in ¶ 14 with respect to the Agreement, plus its attorneys' fees and costs, pursuant to paragraph 22 of the Agreement. See Exhibit A.

30.     Plaintiff is the rightful owner and Lessor of the Equipment or alternatively, Plaintiff possesses an undisputed, perfected first priority purchase money security interest in such property.

31.     Plaintiff is entitled to immediate possession of the Equipment upon the default of Defendants.

32.     Upon the best of my information and belief, Defendants are in possession or control of the Equipment.

33.     Upon the best of my information and belief, no other persons or entities have an interest in the Equipment other than Plaintiff and Defendants.

34.     Plaintiff has made demand upon Defendants for the return of the Equipment, however, they have failed and/or refused to return or surrender it.

35.     The total value of the uncollected Equipment is estimated to be $50,000.00 assuming it is in good condition subject only to ordinary wear and tear.

36.     The Equipment is materially declining in value as a result of its ongoing use, depreciation and market conditions.

37.     The Equipment is actively being concealed by the Defendants with the express intent of causing harm to the legal rights of Plaintiff.

38.     Plaintiff has retained a collection agency and repossession company to assist it in recovering the Equipment but has not been able to recover the Equipment.

39.     I have been working in the equipment financing industry for over 10 years and have dealt with situations where customers conceal leased equipment. I have personal knowledge and experience that when a customer conceals equipment, the lessor faces an immediate risk that the leased equipment will lost, stolen, destroyed or otherwise never located. I have personally had a number of instances in my experience in the equipment financing industry where a lessee has concealed equipment and the equipment was lost, stolen, destroyed or otherwise never located. Based on my personal experience, the fact that a customer is concealing equipment is the biggest single predictor of whether leased equipment will ultimately never be located. In fact, in my considerable experience in the equipment finance industry generally, there is no better predictor of potential loss than when a customer actively conceals equipment. I reasonably believe that the Equipment is in immediate danger of loss.

40.     The Equipment is commercial equipment which require periodic maintenance. The failure to conduct periodic maintenance will cause the value of the Equipment to diminish in value or may reduce the value of the Equipment to a point that the remaining value is only salvage. Based on my considerable experience in the equipment finance industry, when a customer conceals equipment there is a high probability that the equipment is not being properly maintained because proper maintenance is hard, if not impossible to perform, while the equipment is being concealed (e.g., qualified mechanics and qualified repair facilities are not likely to work on equipment that is being concealed from its owner). Under this situation, Plaintiff is under a very high risk that the value of the Equipment will be considerably diminished due to the failure of Defendants to conduct periodic maintenance.

41.     The Equipment has not been seized under any process, execution or attachment against the property of the Plaintiff.

42.     Plaintiff is in danger of losing the Equipment, unless it is taken out of the possession of the defendant, or otherwise secured.


[remainder of page intentionally left blank]

FURTHER AFFIANT SAYETH NAUGHT

By: _____

Spencer Thomas

Subscribed and sworn to before me,
the undersigned authority, this **16**
day of **Sept.** , 2016, to certify
which, witness my hand and official seal of office.

_____

Notary Public, State of **Minnesota**
Printed Name: **Sharon L Goetz**

My Commission Expires:

SHARON LEE GOETZ
NOTARY PUBLIC - MINNESOTA
My Commission Expires
January 31, 2018

10